ATLANTIC MUTUAL INSURANCE COMPANY *vs.* WENDY
MCFADDEN & others.[1]

Suffolk. April 6, 1992. - July 14, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Insurance*, Comprehensive liability insurance, Insurer's obligation to de-
fend, Pollution exclusion clause, Construction of policy, Coverage. *Lead
Poisoning. Contract*, Insurance, Construction of contract. *Words*,
"Pollutant."

A pollution exclusion clause in a comprehensive general liability policy did
not exclude coverage for a claim arising out of injuries caused by the
presence of lead paint in a private residence. [91-92]


CIVIL ACTION commenced in the Superior Court Depart-
ment on September 13, 1990.

The case was heard by *Patrick J. King*, J., on a motion for
summary judgment.

The Supreme Judicial Court granted a request for direct
appellate review.

*Richard L. Neumeier* for the plaintiff.

*Lee H. Kozol* (*Lowry E. Heussler* with him) for Dime
Real Estate Services-Massachusetts, Inc., & another.

*Robert J. Doyle*, for Wendy Mcfadden, submitted a brief.

NOLAN, J. Atlantic Mutual Insurance Company (Atlantic)
commenced an action in the Superior Court, seeking a decla-
ration of its rights and obligations under a comprehensive
general liability policy issued to Dime Real Estate Services-
Massachusetts, Inc., and Dime Savings Bank of New York,
FSB (collectively, Dime). Specifically, Atlantic sought to de-

---

[1]Sanders Mcfadden and Windell Mcfadden, the minor children of
Wendy Mcfadden, Dime Real Estate Services-Massachusetts, Inc., and
Dime Savings Bank of New York, FSB.

termine whether it had a duty under the policy to defend Dime in an action for damages arising out of the lead poisoning of two children in property allegedly owned or controlled by Dime and leased to Wendy McFadden and her children. Relying primarily on a provision in the policy entitled "Pollution Exclusion," Atlantic alleged in its amended complaint, the relevant portions of which are set forth in the Appendix, that it did not have to defend or to indemnify Dime in the suit.

The judge determined that the pollution exclusion did not exclude coverage for the McFaddens' claims. The judge ruled that there is no language in the policy which even suggests that lead in paint, putty, or plaster is a "pollutant" within the meaning of the provision. To the extent that the provision can be read to imply that lead in paint is a pollutant for which coverage is excluded under the policy, the judge held that the provision is ambiguous and the ambiguity must "be resolved against the insurer." *Quincy Mut. Fire Ins. Co.* v. *Abernathy*, 393 Mass. 81, 83 (1984). The judge entered summary judgment for Dime and issued a judgment for declaratory relief, ordering Atlantic to defend and to indemnify Dime in the action filed by Wendy McFadden. Atlantic appealed. We granted Atlantic's application for direct appellate review.

On appeal, Atlantic challenges only the judge's ruling regarding the inapplicability of the pollution exclusion provision.[2] Atlantic maintains that lead in paint, putty, or plaster, although not specifically listed in the pollution exclusion as a "contaminant" or "irritant," certainly falls within either or both of those categories and therefore is properly classified as a "pollutant" for purposes of the exclusion provision.[3] We do not agree with Atlantic's interpretation.

---

[2]Atlantic does not appeal from the judge's decision with respect to other issues raised in the motion for summary judgment. Therefore, those issues are deemed waived. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

[3]The term "pollutant" is defined in the policy as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot,

When construing language in an insurance policy, we "consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." *Hazen Paper Co.* v. *United States Fidelity & Guar. Co.*, 407 Mass. 689, 700 (1990), and cases cited. We conclude that an insured could reasonably have understood the provision at issue to exclude coverage for injury caused by certain forms of industrial pollution, but not coverage for injury allegedly caused by the presence of leaded materials in a private residence. See *West Am. Ins. Co.* v. *Tufco Flooring East*, 104 N.C. App. 312, 321-326 (1991) (construing substantially same pollution exclusion). There simply is no language in the exclusion provision from which to infer that the provision was drafted with a view toward limiting liability for lead paint-related injury. The definition of "pollutant" in the policy does not indicate that leaded materials fall within its scope. Rather, the terms used in the pollution exclusion, such as "discharge," "dispersal," "release," and "escape," are terms of art in environmental law which generally are used with reference to damage or injury caused by improper disposal or containment of hazardous waste. *West Am. Ins. Co.*, *supra* at 324.

For these reasons, we hold that the judge properly awarded summary judgment to Dime on the issue of the pollution exclusion provision.[4]

*Judgment affirmed.*

---

fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

[4]That part of the judgment which orders Atlantic to indemnify is premature but no argument on this issue has been advanced on appeal and, therefore, we do not reach it. However, Atlantic is not entitled to a declaration which it seeks that it has no obligation to defend or to indemnify.

APPENDIX.

The relevant portions of the amended complaint and of the policy are as follows:

## "*Introduction*

"1.    This is an action for declaratory relief filed by the Atlantic Mutual Insurance Company against its insureds and two third-party claimants which seeks a determination of the rights and responsibilities of the parties under a contract of insurance.

## "*The Parties*

"2. · The Atlantic Mutual Insurance Company ('Atlantic') is an insurance company incorporated in the State of Connecticut and is duly licensed to sell insurance policies in the Commonwealth of Massachusetts.

"3.    Dime Real Estate Services-Massachusetts, Inc. ('Dime Real Estate') is a foreign corporation doing business in the County of Suffolk, Massachusetts.

"4.    Dime Savings Bank ('Dime Bank') is a foreign corporation doing business in the County of Suffolk, Massachusetts.

"5.    Sanders McFadden is a minor (date of birth: May 8, 1987) residing at 29 Howard Street, No. 3, Brockton, Massachusetts 02401. The defendant, Wendy McFadden, is the mother and next friend of Sanders McFadden.

"6.    Windell McFadden is a minor (date of birth: January 16, 1986) residing at 29 Howard Street, No. 3, Brockton, Massachusetts 02401. The defendant, Wendy McFadden, is the mother and next friend of Windell McFadden.

"7.    At all material times, [Dime] Real Estate and [Dime] Bank ('The Dimes') were alleged to be owners of 29 Howard Street, No. 3, Brockton, Massachusetts 02401, as defined in [105] C.M.R. 460.100(B).

## "*Facts*

"A.    *The Underlying Claim.*

"8.    On or about January 14, 1988, Sanders and Windell McFadden became tenants at 29 Howard Street, Brockton, Massachusetts 02401 ('the premises').

"9.   On information and belief, at the inception of the McFadden[s]'s tenancy and throughout that tenancy, the premises had a level of lead in the paint, plaster and/or other accessible materials (collectively referred to hereinafter as 'lead paint') of the interior and exterior surfaces that was hazardous to the health and well-being of its inhabitants.

"10.  Both Sanders and Windell McFadden claim to have been diagnosed as being lead poisoned.

"11.  On or about December 6, 1988, an inspection of the premises documented the presence of lead paint in the interior and exterior surfaces of the premises.

"12.  On or about August 11, 1989, Wendy McFadden, as mother and next friend of Sanders and Windell McFadden, brought a civil action (Plymouth C.A. No. 89-1477B) against, among others, the Dimes, to recover damages suffered by them as a result of lead poisoning.

"13.  The *McFadden v. Lemoine, et al,* Plymouth Civil Action No. 89-1477[B] (Jan. 29, 1990) First Amended Complaint states in pertinent part:

   " '*Introduction*

      " 'This is an action to recover damages suffered by the plaintiffs as a result of the lead poisoning of the minor plaintiffs, . . . .'

   " '. . .

"B.   *Atlantic's Insurance Coverage of the Dimes.*

"16.  Atlantic issued its Comprehensive General Liability (CGL) policy no. 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 to the Dimes effective in 1983 and renewed it thereafter. On or about October 25, 1983 the Atlantic policy was amended by an endorsement adding property at 29 Howard Street, Brockton, Massachusetts 02401. The Atlantic CGL policy provided insurance coverage for bodily injury liability and property damage liability as follows:

      " 'I.   COVERAGE A - BODILY INJURY LIABILITY AND COVERAGE B - PROPERTY DAMAGE LIABILITY

      " 'The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

      " 'A. Bodily injury or

      " 'B. Property damage

" 'to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the obligations of the suit are groundless[,] false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments and settlements.

" 'The Atlantic policy defines "occurrence" as follows:

" ' "Occurrence" means "an accident, including conditions or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." '

"17.   The policy further provides that:

" 'It is agreed that the exclusion relating to the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalies, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants is replaced by the following:

" '(1)   *to bodily injury* or *property damage* arising out of the actual, alleged or threatened discharge, [dispersal], release or escape of pollutants;

" '(a)   at or from premises owned, rented or occupied by the named insured.

" '(b)   at or from any site or location used by or for the named insured or other for the handling, storage, disposal, processing or treatment of waste;

" '(c)   which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for the name insured or any person or organization for whom the named insured may be legally responsible; or

" '(d)   at or from any site or location in which the named insured or any contractors or subcontractors working directly or indirectly on behalf of the named insured are performing operations;

" '(i)   if the pollutants are brought on or to the site or location in connection with such operations; or

" '(ii)  if the operations are used to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.

" '(2)   to any loss, cost or expense arising out of any governmental direction or request that the named insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

" 'Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalies, chemicals and wastes. Waste includes materials to be recycled, reconditioned or reclaimed.'

" . . .

## "Count I

"20.  Atlantic realleges paragraphs 1 through 19 and incorporates them herein.

"21.  There is no coverage afforded under the Atlantic policy and there is no duty to defend or indemnify the Dimes because:

" . . .

"(b)   the lead paint contamination at the premises and the alleged bodily injury to Sanders and Windell McFadden was expected from the standpoint of the Dimes, and does not constitute an 'occurrence' within the meaning of the Atlantic policy; . . .

"WHEREFORE, the plaintiff, Atlantic, prays for a judgment declaring that Atlantic does not have a duty to defend or indemnify its insured, the Dimes and for such other and further relief as this Court deems appropriate."