## MONTICELLO INSURANCE COMPANY, Plaintiff,

v.

## Michael BAECHER and John J. Baecher, Jr., Co–Executors of the Estate of John Joseph Baecher, Deceased,

## Louise Conyer, and Shnay Hunter, an infant who is sued by and through Louise Conyer, her grandmother and next friend, Defendants.

### Civ. A. No. 2:93cv642.

United States District Court,
E.D. Virginia,
Norfolk Division.

July 19, 1994.

Alan B. Rashkind, Furniss, Davis, Rashkind & Saunders, Norfolk, VA, for plaintiff.

Marshall T. Bohannon, Jr., Bohannon, Bohannon & Hancock, Norfolk, VA, for defendants Michael Baecher and John J. Baecher, Jr.

Oscar Lawrence Gilbert, Rabinowitz, Rafal, Swartz, Taliaferro & Gilbert, Norfolk, VA, for defendants Louise Conyer and Shnay Hunter.

## OPINION AND FINAL ORDER

REBECCA BEACH SMITH, District Judge.

### I. Factual and Procedural History

Defendants Michael Baecher and John J. Baecher, Jr., co-executors of the Estate of John Joseph Baecher ("the Estate"), are owners, in that capacity, of property located at 1821 LaSalle Avenue in Norfolk, Virginia. Plaintiff Monticello Insurance Company is a corporation organized pursuant to the laws of Delaware and having its principal place of business in New Jersey. Plaintiff is a non-admitted insurer in the State of Virginia authorized to issue surplus lines of insurance coverage in Virginia.[1] Overstreet and Newell, located in Atlanta, Georgia, acts as plaintiff's general agent in issuing insurance policies in the southeastern part of the country.

Plaintiff issued to the Estate certain insurance policies covering the property at 1821 LaSalle Avenue. The two policies in issue ran from March 1990 to March 1991 and from March 1991 to March 1992.[2] In late November of 1989, defendant Conyer and her granddaughter, defendant Hunter, leased the premises at 1821 LaSalle Avenue. They lived there until July of 1991, when defendant Hunter was diagnosed with lead poisoning. Shortly thereafter, defendants Conyer and Hunter instituted suit in the Circuit Court for the City of Norfolk, Virginia against Baecher, claiming that Baecher's negligence was the proximate cause of defendant Hunter's injuries and demanding $500,-

---

1. Surplus lines insurance carriers are not subject to rate and form regulation. Such carriers generally insure risks not taken on by other, admitted, insurance companies.

2. The Estate's LaSalle Avenue property was covered, beginning in March 1988, by policies identical to the 1990–91 policy.

000 in damages.[3] Baecher then contacted plaintiff demanding that plaintiff defend against the suit and indemnify Baecher against any damage award. Plaintiff denied coverage and instituted the present federal court suit, seeking a declaratory judgment that it is not required, under the insurance policies it issued, to defend or indemnify defendants Baecher and Baecher against claims asserted by defendants Conyer and Hunter in the underlying state court litigation.

Plaintiff claims that, because the policies contain several exclusion clauses, no coverage exists for the claim asserted by defendants. On July 1, 1993, defendants Conyer and Hunter answered, denying the allegations of the complaint. On July 7, 1993, defendants Conyer and Hunter filed an amended answer. On August 13, 1993, plaintiff was granted leave to, and did file an amended complaint seeking reformation of one of the policies or, in the alternative, additional declaratory relief. On September 10, 1993, defendants Baecher and Baecher answered denying allegations of the complaint. The final pretrial conference was held on April 8, 1994.

On April 21, 1994, this court heard evidence and argument from the parties, took the matter under advisement, and directed the parties to file post-trial briefs. All parties have now filed their briefs and the case is ripe for decision. However, in the meantime, the court, on its own initiative, raised a jurisdictional question based on the Fourth Circuit's decision in *Mitcheson v. Harris*, 955 F.2d 235 (4th Cir.1992).[4]

## II. Jurisdiction Under the Declaratory Judgment Act

A declaratory judgment action under 28 U.S.C. §§ 2201–2202, in and of itself, does not confer federal jurisdiction. *E.g., Schilling v. Rogers,* 363 U.S. 666, 667, 80 S.Ct. 1288, 1290–91, 4 L.Ed.2d 1478 (1960); *Delavigne v. Delavigne,* 530 F.2d 598, 601 (4th Cir.1976). Rather, this court has the power to entertain the declaratory judgment action before it in the case *sub judice* because said action is a "case of actual controversy" within this court's diversity jurisdiction. *See Nautilus Ins. Co. v. Winchester Homes, Inc.,* 15 F.3d 371, 375 (4th Cir.1994). The question has arisen, however, as to whether this court *should* exercise the jurisdiction it possesses. *See Mitcheson,* 955 F.2d at 237. "It has long been settled that a federal court has some measure of discretion to decline to entertain a declaratory judgment action that is otherwise properly within its jurisdiction." *Nautilus,* 15 F.3d at 375. However, a district court "may not refuse to entertain a declaratory judgment action out of 'whim or personal disinclination, but may do so only for good reason.'" *Id.* (citations omitted). Recently, in *Nautilus,* the Fourth Circuit set forth the framework district courts should utilize when determining when to exercise jurisdiction over a declaratory judgment action in federal court on diversity grounds.

The court noted first that the discretion "conferred by the Declaratory Judgment Act must 'be liberally exercised to effectuate the purposes of the statute.'" *Id.* (quoting

---

**3.** The motion for judgment also claimed that defendant Conyer was injured in the amount of $25,000, representing amounts spent on medical care for defendant Hunter.

**4.** *Mitcheson* involved a factual scenario nearly identical to the one presented by the case at bar. Nathan Harris owned a house in Baltimore, which he rented to Elizabeth Davis, legal guardian of the infant Charles Vines, in 1978. *Mitcheson v. Harris,* 955 F.2d 235, 236 (4th Cir.1992). Harris procured a liability insurance policy on the house from Lloyds of London. *Id.* The policy, like those involved in this case, defined a covered occurrence as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." *Id.* In March of

1980, and again in 1981, Vines tested positive for elevated blood lead levels. *Id.* In February of 1989, Vines and Davis filed a complaint in state court, based solely on state law, against Harris. *Id.* After being notified of the claim, Lloyds' provided Harris with a defense, but under reservation of rights. *Id.* After the action had been filed in state court, Mitcheson, acting for Lloyds', filed a declaratory judgment action in federal court seeking a declaration that it was not obligated to defend or indemnify Harris. *Id.* Lloyds' argued that the lead poisoning was not an occurrence covered by the policy and that, even if it were, the alleged injuries fell within the pollution exclusion. *Id.* Thus, the district court in *Mitcheson* was presented with the same issues facing this court: when did the lead poisoning "occur" and does it fall within the pollution exclusion.

*Aetna Cas. & Sur. Co. v. Quarles,* 92 F.2d 321, 324 (4th Cir.1937)). A federal district court normally should "entertain a declaratory judgment action within its jurisdiction when it finds that the declaratory relief sought (i) 'will serve a useful purpose in clarifying and settling the legal relations in issue,' and (ii) 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Id.* (quoting *Quarles,* 92 F.2d at 324) (internal quotations omitted).

Further, the Fourth Circuit noted that it frequently has approved the use of declaratory judgment actions "to resolve disputes over liability insurance coverage, even in advance of a judgment against the insured in the underlying claim for which coverage is sought." *Id.* The court recognized that *Mitcheson* held that a district court should not exercise jurisdiction over such a dispute, but stated *"Mitcheson* did not announce a *per se* rule forbidding a federal court to entertain a declaratory judgment action brought to resolve issues of insurance coverage during the pendency of related litigation against the insured in the state courts." *Id.* at 376. Instead, asserted the court,

> *Mitcheson* held only that when a federal court is confronted with an insurer's request for a declaratory judgment on coverage issues during the pendency of related litigation in the state courts, its discretion must be guided not only by the criteria outlined in *Quarles,* which focus on the general utility of the declaratory relief sought, but also by the same considerations of federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state-law

claims in the face of parallel litigation in the state courts.

*Id.*

■ Thus, in *Nautilus,* the Fourth Circuit concluded that *Mitcheson* raised several concerns which district courts should consider, in addition to the traditional factors set forth in *Quarles.*[5] The court identified four additional factors: (1) How strong is the state's interest in having the issues raised in the federal declaratory action decided in the state courts? (2) Can the issues raised in the federal action be more efficiently resolved in state court? (3) Are there overlapping issues of fact or law which would cause entanglement between the federal and state court systems? (4) Is this suit being used for procedural fencing—i.e., to achieve a federal hearing in a case not otherwise removable? *Id.* (citations omitted). Although this court is of the opinion that, because the two cases are virtually identical both factually and legally,[6] the reasoning of *Mitcheson* is dispositive in the case at bar, it will review and apply each of the factors set forth in the *Nautilus* framework to determine whether to exercise jurisdiction.

### 1. The State's Interest

■ According to the Fourth Circuit in *Nautilus,* in order for the state to have a sufficiently strong interest in having particular issues decided in state courts, the questions of state law must be "difficult" or "unsettled." *Nautilus,* 15 F.3d at 378. No party here attempts to argue that the issues involved in this case are anything but difficult and unsettled. There simply is *no* law in Virginia regarding when insurance coverage is triggered, i.e., when the "occurrence" takes place, in a lead paint poisoning situation.[7]

---

5. *See supra* at 1147, 1148. This court agrees that the two factors articulated in *Quarles* support the exercise of jurisdiction in this case. Namely, the declaratory relief sought will clarify the legal relations in issue and will afford relief from the uncertainty giving rise to this action. In other words, the relief sought would determine whether plaintiffs must indemnify and defend defendants Baecher and Baecher against the state court action.

6. *See supra* note 4. The only difference this court can ascertain is that *Mitcheson* involved

the Maryland state court system while the case at bar involves the Virginia courts. Moreover, although the Fourth Circuit clarified *Mitcheson* in *Nautilus,* the former still remains legal precedent in this circuit.

7. This fact renders the state's interest in this issue even stronger in the case *sub judice* than it was in *Mitcheson.* At least in Maryland some case law exists on the subject of when an "occurrence" takes place in a lead poisoning situation. *See Scottsdale Ins. Co. v. American Empire Surplus Lines Ins. Co.,* 811 F.Supp. 210 (D.Md.

Similarly, no Virginia court has interpreted the standard Pollution Exclusion.[8] Unlike the issues presented in *Nautilus*, important state law issues involved in this case are unsettled, difficult, and close. Therefore, Virginia has an extremely strong interest in having these issues decided in state court, a forum better equipped to create Virginia law which will be consistent with its public policy.

## 2. *Efficiency of State Court*

In focusing on efficiency concerns, a court should look at whether the questions in controversy between the parties to the federal suit can better be settled in the proceedings that are already pending in the state court. *Nautilus*, 15 F.3d at 378. "This, in turn, requires careful inquiry into 'the scope of the pending state court proceeding[s],' including such matters as 'whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, and whether such parties are amenable to process in that proceeding.'" *Id.* (quoting *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495, 62 S.Ct. 1173, 1176, 86 L.Ed. 1620 (1962)).

In *Mitcheson*, a case nearly identical to the one *sub judice*,[9] the Fourth Circuit held that all the issues should be resolved in a *single court system*. "Because the principal litigation stemming from the allegations of lead poisoning is non-removable, the Maryland courts are the only system with the jurisdictional power to resolve all facets of this controversy, and they are also in the best position to assess how best to handle any satellite suits." *Mitcheson*, 955 F.2d at 239. However, in *Nautilus*, the Fourth Circuit apparently retreated somewhat from this view. In a case involving the determination of which insurer was liable, the court held:

> that issue is not directly raised in either of the two pending state actions, which involve the entirely separate and indepen-

dent question of Reliance's liability to Winchester under the tort law of two different states. Nor are all the parties with interests in this coverage dispute joined as parties to the pending state proceedings: none of the three insurance companies whose policies are implicated in this dispute is formally a party to either of those actions. Finally, it is not clear to us that the insurers can be brought into those actions at this point. . . . That the issues raised here might be resolved in some yet-to-be filed action brought in state court . . . is not *alone* sufficient to justify dismissal of this action.

*Nautilus*, 15 F.3d at 379 (emphasis added). The court went on to find that, because the parties were on the eve of trial, it would in fact be inefficient to require them to start over again in state court. *Id.*

In the case at bar, the parties assert that the state court tort case is not a forum in which the coverage issues raised here could be resolved. They argue that an entirely new action would have to be filed in a state circuit court. Additionally, plaintiffs claim that this federal case should be treated differently from *Mitcheson* because Virginia law on the availability of a declaratory judgment action while a tort action is pending differs from Maryland law. Apparently, in Maryland it is questionable whether state courts will entertain a declaratory judgment action while there is pending tort litigation that will resolve common issues critical to both tort and coverage determinations. *See Mitcheson*, 955 F.2d at 240 ("[T]he parties dispute whether Maryland courts would entertain a declaratory judgment action under circumstances such as these.") Plaintiffs then argue that the Fourth Circuit in *Mitcheson* must have taken this Maryland rule of law into account when it held that the district court should have refused to exercise jurisdiction over the federal declaratory

---

1993); *Hartford Mut. Ins. Co. v. Jacobson*, 73 Md.App. 670, 536 A.2d 120 (1988). However, no Virginia court has addressed the issue.

**8.** Other state courts have held both that the Pollution Exclusion covers lead paint claims and that it excludes lead paint claims. *See Atlantic Mut. Ins. Co. v. McFadden*, 413 Mass. 90, 595 N.E.2d 762, 764 (1992) (lead paint not a "pollu-

tant" within the scope of the pollution exclusion); *Oates v. New York*, 157 Misc.2d 618, 597 N.Y.S.2d 550, 553–54 (N.Y.Ct.Cl.1993) (lead paint poisoning claim falls within the pollution exclusion).

**9.** *See supra* notes 4 and 6.

judgment action.[10] Plaintiffs further argue, because the Virginia Supreme Court has ruled that separate declaratory judgment actions by insurers are appropriate even where there is then pending a tort action in which the same critical issue is scheduled for adjudication, *see, e.g., Reisen v. Aetna Life & Cas. Co.,* 225 Va. 327, 335–36, 302 S.E.2d 529 (1983),[11] no state law prohibits this court from proceeding with a declaratory judgment action, as it did in *Mitcheson.*

However, the Fourth Circuit in *Mitcheson* did not rest its decision on any particular state law ground. Instead, the court stated that it was ultimately for the Maryland courts "to decide both whether questions of state law should be entertained in a declaratory action instead of being reserved for the primary litigation and, if such a declaratory judgment action is heard, whether it should be resolved before the primary suit." 955 F.2d at 240. In either event, the circuit court determined that the Maryland court system was better suited to handle all litigation stemming from a single controversy. *Id.* at 239.

The Fourth Circuit then noted in *Nautilus* that the fact that the issues involved here could be brought in a state court action is not *alone* sufficient to justify dismissal of this action. 15 F.3d at 379. Only if that action is more effective *or* efficient should the court decline to entertain the action. *Id.* In the case at bar, as in *Mitcheson,* a state court action clearly would be more effective due to the unsettled state law issues involved.[12] Additionally, as the Fourth Circuit noted in *Mitcheson,* "the prospects for coordinated management and alleviation of abrasion are greater when the litigation is handled under one jurisdictional roof." 955 F.2d at 239.[13]

### 3. Unnecessary Entanglement

The third factor a court should consider when determining whether to exercise jurisdiction over a declaratory judgment action is whether permitting the federal action to go forward would result in unnecessary entanglement between the state and federal court systems, because of the presence of overlapping issues of fact or law. *Nautilus,* 15 F.3d at 377. In *Nautilus,* the court held that, unlike the situation involved in *Mitcheson,* there were no overlapping issues of fact or law. *Id.* at 379. In *Mitcheson,* on the other hand, the court pointed specifically to the fact that the federal court would have to determine when the child's lead poisoning took place and noted that the insured might be collaterally estopped from litigating that issue in the state court. 955 F.2d at 239. The identical issues involved in *Mitcheson* are before this court.[14]

Although the parties to this action claim that the issues before this court and the state court do not overlap, the determination of when the lead poisoning took place, the concern noted by the Fourth Circuit in *Mitcheson,* is present and must be made in both this federal suit and the state action. Further, plaintiffs claim that Virginia law does away with the problem of collateral estoppel addressed in *Mitcheson.* Particularly, plaintiffs argue that the Virginia Supreme Court has held that determinations in a tort action are not preclusive in coverage litigation.

10. The gist of this argument is that the district court in a diversity case is required to apply the state's substantive law. If, in fact, Maryland law prohibits a declaratory judgment action while there is pending tort litigation involving issues common to both actions, a federal district court exercising diversity jurisdiction would then be required to apply that law. The result would be dismissal of the declaratory judgment action. As an aside, this court notes that this argument also assumes the Maryland prohibition on declaratory judgment actions to be substantive law and not procedural in nature.

11. The court knows of no reason why a state court declaratory judgment action could not be consolidated with the state tort action.

12. *See supra* at 7.

13. Admittedly, this federal action has proceeded to an advanced stage of litigation. However, the court notes that, in *Mitcheson,* the district court had resolved the case on summary judgment when the Fourth Circuit remanded and ordered its dismissal. This court feels compelled to follow the Fourth Circuit's ruling in *Mitcheson.* No factor identified by the parties justifies a different result, from either a legal or factual standpoint. *See supra* at 1148 & notes 4 and 6.

14. *See supra* notes 4, 6, and 13.

*Reisen v. Aetna Life & Cas. Co.,* 225 Va. 327, 335–36, 302 S.E.2d 529 (1983) (citing *Farm Mut. Auto Ins. Co. v. Hammer,* 177 F.2d 793 (4th Cir.1949)). Accordingly, argue plaintiffs, concerns about collateral estoppel, listed as an additional problem by Judge Wilkinson in *Mitcheson,* do not exist under Virginia law, as apparently they do under Maryland law. The evident flaw in this argument is that this court is concerned with the reverse situation—in other words, this court is not dealing with the question of whether issues decided in the tort case would have preclusive effect in the case *sub judice.* Rather, this court's concern is with whether issues decided here would have a preclusive effect in the state tort action. Nothing in *Reisen* or *Hammer* indicates that an issue resolved in a federal court *coverage* suit would not have preclusive effect in the state *tort* action. As stated, these cases deal with determinations made in tort actions having preclusive effect in coverage actions. Indeed, the parties are before this court precisely because its rulings on the coverage issue will be binding in the state court tort action.

### 4. Procedural Fencing

Lastly, the court must consider whether this federal declaratory judgment action is being used merely as a device for procedural fencing. *Nautilus,* 15 F.3d at 380. This court has no reason to believe that the parties are engaged in procedural fencing. However, clearly they have filed an otherwise nonremovable case in federal court.

> In *Nautilus,* the Fourth Circuit opined: Though the parties might have filed this declaratory judgment action in state court, they chose to proceed in federal court instead, as they were authorized to do by 28 U.S.C. §§ 1332 and 2201. Having done so, they are entitled to have the federal court issue the declaration of rights and duties that they seek, *unless* the considerations of federalism, efficiency, and comity outlined in *Mitcheson* are strong enough to overcome the federal policy in favor of awarding declaratory relief where it will "serve a useful purpose in clarifying and settling the legal relations in issue" and "afford relief from the uncertainty, insecurity, and controversy giving rise to the controversy."

15 F.3d at 380 (quoting *Quarles,* 92 F.2d at 324) (emphasis added).

In the case at bar, a Virginia state court should resolve the issues precisely because they are so unsettled. This is not a case, such as *Nautilus,* where a federal court is being asked to apply clearly settled state law. In this court's opinion, the concerns of federalism and comity outlined in *Mitcheson* outweigh federal policy in favor of awarding declaratory relief. Except for the fact that *Mitcheson* involved Maryland law and Maryland courts, this case is factually and legally identical. Despite the parties' arguments to the contrary, there are no significant differences between the two states mandating a different outcome in this case from that reached in *Mitcheson.* As the court stated there, "[a] system of judicial federalism has enough inherent friction without the added aggravation of unnecessary federal declarations on questions such as those at issue here." *Mitcheson,* 955 F.2d at 240.

### III. Conclusion

For the reasons articulated above, this action is DISMISSED without prejudice to the parties' right to refile the case in the appropriate state court. The Clerk is DIRECTED to send a copy of this opinion and final order to counsel for plaintiff and counsel for defendants.

It is so ORDERED.