Western Alliance Insurance Company *vs.* Jarnail Singh
Gill & others.[1]

Middlesex. October 6, 1997. - November 10, 1997.

Present (Sitting at Lowell): Wilkins, C.J., Abrams, Lynch, Greaney, Marshall, & Ireland, JJ.

*Insurance,* General liability insurance, Pollution exclusion clause, Insurer's obligation to defend, Construction of policy. *Contract,* Insurance, Construction of contract.

Discussion of cases and circumstances in which the pollution exclusion clause in a general liability insurance policy did not bar coverage for accidents arising during the course of normal business activities involving a "discharge, dispersal, release or escape" of any "irritant or contaminant." [118-120]

Where insureds under a policy of general liability insurance covering its ordinary restaurant business activities would not reasonably expect the insurer to disclaim coverage under the pollution exclusion clause for injuries suffered by a patron injured by exposure to carbon monoxide fumes produced by the improper operation of the restaurant's ovens, the insurer was not relieved thereby of its duties to defend and indemnify its insureds. [116-121]

Civil action commenced in the Superior Court Department on May 12, 1994.

The case was heard by *Wendie I. Gershengorn,* J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Rodney E. Gould* (*Craig S. Harwood* with him) for Katya Fels.

*Owen P. McGowan* for the plaintiff.

*Laura A. Foggan, Daniel E. Troy, Cara B. Moylan,* of the District of Columbia, & *Rosanna Sattler,* for the Insurance Environmental Litigation Association, amicus curiae, submitted a brief.

---

[1] There are several additional defendants. The defendants principally concerned with this appeal are those insured under the policy issued by Western Alliance, and Katya Fels, who brought the underlying action for damages that led to the declaratory judgment action at issue in this appeal.

*Irene Warshauer & Whitman G.S. Knapp*, of New York, & *Amy Bach*, of California, for United Policyholders, amicus curiae, submitted a brief.

GREANEY, J. The plaintiff, Western Alliance Insurance Company (Western Alliance), commenced an action in the Superior Court seeking a declaration that, under the "pollution exclusion" provision in its general liability policy, it was not obligated to defend or indemnify its insureds, the owners and operators of a restaurant in Cambridge known as the India Gate Restaurant. The declaratory judgment proceedings were triggered by an action in tort and contract brought by Katya Fels against the insureds, after she was exposed to carbon monoxide fumes[2] while dining at the restaurant.[3] Cross motions for summary judgment were filed by Western Alliance and by Fels, who, as has been noted, is a named defendant in the declaratory judgment action. A judge in the Superior Court granted Western Alliance's motion for summary judgment. Fels appealed from a judgment declaring that Western Alliance had no duty to defend or indemnify its insureds, and we transferred the case to this court on our own motion. We now vacate the judgment and order the entry of a judgment declaring that there is coverage under the policy.

The pollution exclusion provision at issue is set forth in the margin.[4] In *Atlantic Mut. Ins. Co.* v. *McFadden*, 413 Mass. 90 (1992), we considered an identical pollution exclusion provi-

[2]Fels suffered permanent damage from the carbon monoxide poisoning. Fels states in her brief that an expert witness testified at the trial of the damages action that the carbon monoxide buildup resulted from the operation of a kitchen fan while all doors and windows were closed, thereby causing the restaurant's tandoori ovens, which were "starved for air," to produce carbon monoxide. (A tandoor is a cylindrical clay oven where meats and chicken are barbecued, and a leavened wheat bread is baked, over a charcoal fire that has been allowed to burn for several hours. 11 New Encyclopaedia Britannica 537 [15th ed. 1987]).

[3]Western Alliance defended Fels' action under a reservation of rights. The jury who decided the case returned a verdict for damages in Fels' favor, and the judgment entered on the jury's verdict has been affirmed by the Appeals Court in a decision pursuant to that court's rule 1:28. *Fels* v. *Gill*, 42 Mass. App. Ct. 1115 (1997).

[4]"It is agreed that the exclusion relating to the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants is replaced by the following:

"(1) to bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

sion, relied upon by the insurer to excuse its duty to defend or indemnify its insured against an action for damages arising out of the lead poisoning of children in a private residence that the insured leased to the children and their mother. We applied the established principle that, "[w]hen construing language in an insurance policy, we 'consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.' " *Id.* at 92, quoting *Hazen Paper Co.* v. *United States Fid. & Guar. Co.*, 407 Mass. 689, 700 (1990). See *Hakim* v. *Massachusetts Insurers' Insolvency Fund*, 424 Mass. 275, 282 (1997); *Slater* v. *United States Fid. & Guar. Co.*, 379 Mass. 801, 803 (1980). In concluding that the insurer could not disclaim its obligations under the policy, we further stated: "We conclude that an insured could reasonably have understood the provision at issue to exclude coverage for injury caused by certain forms of industrial pollution, but not coverage for injury allegedly caused by the presence of leaded materials in a private

"(a) at or from premises owned, rented or occupied by the named insured;

"(b) at or from any site or location used by or for the named insured or others for the handling, storage, disposal, processing or treatment of waste;

"(c) which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for the named insured or any person or organization for whom the named insured may be legally responsible; or

"(d) at or from any site or location on which the named insured or any contractors or subcontractors working directly or indirectly on behalf of the named insured are performing operations:

"(i) if the pollutants are brought on or to the site or location in connection with such operations; or

"(ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.

"(2) to any loss, cost or expense arising out of any governmental direction or request that the named insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

"Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

residence. See *West Am. Ins. Co.* v. *Tufco Flooring East*, 104 N.C. App. 312, 321-326 (1991) (construing substantially same pollution exclusion). There simply is no language in the exclusion provision from which to infer that the provision was drafted with a view toward limiting liability for lead paint-related injury. The definition of 'pollutant' in the policy does not indicate that leaded materials fall within its scope. Rather, the terms used in the pollution exclusion, such as 'discharge,' 'dispersal,' 'release,' and 'escape,' are terms of art in environmental law which generally are used with reference to damage or injury caused by improper disposal or containment of hazardous waste. *West Am. Ins. Co.*, *supra* at 324." *Atlantic Mut. Ins. Co.* v. *Mc-Fadden*, *supra.*

There is a difference between lead paint poisoning and carbon monoxide poisoning, and between a private residence and a business. Nonetheless, we think that the construction given to the exclusion in *McFadden* also applies in this case. In addition to inclusion of the terms "discharge," "dispersal," "release," and "escape," the exclusion's definition of "pollutants" endeavors to particularize the more general words "irritant or contaminant" by reference to "smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." Each of the latter words brings to mind products or byproducts of industrial production that may cause environmental pollution or contamination. While Western Alliance may have expected the provision to sweep broadly, and in clause (1)(a) to apply to premises used as a residence or a business, the exclusion has to be interpreted and applied in a commonsense manner with due attention to the circumstances of the accident giving rise to a coverage claim.

The exclusion should not reflexively be applied to accidents arising during the course of normal business activities simply because they involve a "discharge, dispersal, release or escape" of an "irritant or contaminant." See American States Ins. Co. v. Koloms, Ill. Sup. Ct. No. 81289, slip op. at 16 (Oct. 17, 1997) (noting that the history of the pollution exclusion indicates that the provision was drafted to avoid enormous expense of environmental litigation and stating that "[w]e would be remiss, therefore, if we were to simply look to the bare words of the exclusion, ignore its raison d'etre, and apply it to situations which do not remotely resemble traditional environmental contamination"). For this reason, courts have held that the exclusion, and similar limiting provisions, did not bar coverage for: injuries caused by the ingestion of lead paint, *Atlantic Mut. Ins. Co.* v. *McFadden*, *su-*

*pra*; the death of a man who inhaled poisonous fumes when he applied adhesive to install a carpet on his boat, *Bituminous Cas. Corp.* v. *Advanced Adhesive Tech., Inc.*, 73 F.3d 335, 337-338 (11th Cir. 1996); injuries caused by exposure to fumes from toxic cements and solvents and congestive dusts created by rubber fabricating processes, *Lumbermens Mut. Cas. Co.* v. *S-W Indus., Inc.*, 23 F.3d 970, 982 (6th Cir. 1994); property damage caused by fumes released from muriatic acid used to etch a floor surface, *Sargent Constr. Co.* v. *State Auto Ins. Co.*, 23 F.3d 1324, 1327 (8th Cir. 1994); injuries caused by the inhalation of chemical fumes from a carpet, *Garfield Slope Hous. Corp.* v. *Public Serv. Mut. Ins. Co.*, 973 F. Supp. 326, 337 (E.D.N.Y. 1997); injuries resulting when fumes emanated from cement used to install a plywood floor, *Calvert Ins. Co.* v. *S & L Realty Corp.*, 926 F. Supp. 44, 46-47 (S.D.N.Y. 1996); injuries sustained from exposure to photographic chemical, *Center for Creative Studies* v. *Aetna Life & Cas. Co.*, 871 F. Supp. 941, 946 (E.D. Mich. 1994); injuries to individuals who ingested malathion during a municipal pesticide spraying operation, *Westchester Fire Ins. Co.* v. *Pittsburg, Kan.*, 768 F. Supp 1463, 1468-1471 (D. Kan. 1991), aff'd sub nom. *Pennsylvania Nat'l Mut. Cas. Ins. Co.* v. *Pittsburg, Kan.*, 987 F.2d 1516 (10th Cir. 1993); injuries incurred by a United States Department of Agriculture inspector when a gasket failed in a refrigeration system causing an ammonia leak, Ekleberry, Inc. *vs.* Motorists Mut. Ins. Co., No. 3-91-39 (Ohio Ct. App. July 17, 1992); paint damage to vehicles which occurred during the spray painting of a bridge, *A-1 Sandblasting & Steamcleaning Co.* v. *Baiden*, 53 Or. App. 890, 892-893 (1981), aff'd, 293 Or. 17 (1982); and, with particular relevance to this case, injuries suffered by persons exposed to an excessive accumulation of inadequately ventilated exhaled carbon dioxide in an office building, *Donaldson* v. *Urban Land Interests, Inc.*, 211 Wis. 2d 224, 225-227 (1997), and carbon monoxide released by faulty heating and ventilation systems, *Stoney Run Co.* v. *Prudential-LMI Commercial Ins. Co.*, 47 F.3d 34, 37-38 (2d Cir. 1995); *Regional Bank* v. *St. Paul Fire and Marine Ins. Co.*, 35 F.3d 494, 497-498 (10th Cir. 1994); *Thompson* v. *Temple*, 580 So. 2d 1133, 1135 (La. Ct. App. 1991); American States Ins. Co. v. Koloms, *supra*, at 17. The common thread between these decisions is that "[a]ll involve injuries resulting from everyday activities gone slightly, but not surprisingly, awry," *Pipefitters Welfare Educ. Fund* v. *West-*

*chester Fire Ins. Co.*, 976 F.2d 1037, 1044 (7th Cir. 1992), and in each, the insurer urged a broad reading of the pollution exclusion clause to cover the accident at issue. However, an objectively reasonable insured, reading the language of the typical pollution exclusion, would not expect a disclaimer of coverage for these types of mishaps even though they involve "discharges," "dispersals," "releases," and "escapes" of "contaminants" and "irritants."[5]

The insureds in this case also would not expect a disclaimer of coverage for the injuries sustained by Fels while she dined at the India Gate Restaurant. The insureds obviously did not contemplate that their ordinary cooking operations would poison patrons while they were enjoying traditional Indian foods and dinners. Surely, when they purchased their policy from Western Alliance, they expected that accidents causing injuries to patrons at the restaurant due to the negligence of employees or the malfunctioning of ovens and other equipment — claims arising during the course of normal business activities — would be covered. A reasonable policyholder "might well understand carbon monoxide is a pollutant when it is emitted in an industrial or environmental setting, [but] would not reasonably characterize carbon monoxide emitted from a [malfunctioning or improperly operated restaurant oven] as 'pollution.' " *Stoney Run Co., supra* at 38, quoting *Regional Bank, supra* at 498.[6] The insureds purchased the general liability policy to protect against potential premises and operations hazards that could arise while conducting a restaurant business. A reasonable

---

[5]We recognize that there are decisions which uphold the insurer's position that the provision is sufficient to exclude coverage. See, e.g., Reliance Ins. Co. *vs.* VE Corp., U.S. Dist. Ct. Civ. A. No. 95-538 (E.D. Pa. Sept. 19, 1995); *Bernhardt* v. *Hartford Fire Ins. Co.*, 102 Md. App. 45 (1994); *League of Minn. Cities Ins. Trust* v. *Coon Rapids*, 446 N.W.2d 419 (Minn. Ct. App. 1989); *Demakos* v. *Travelers Ins. Co.*, 205 A.D.2d 731 (N.Y. 1994); *Madison Constr. Co.* v. *Harleysville Mut. Ins. Co.*, 451 Pa. Super. 136 (1996).

We are not persuaded by the reasoning of these decisions.

[6]We comment briefly on three Federal decisions from Massachusetts in which the courts interpreted exclusions substantially similar to the exclusion in Western Alliance's policy.

The United States District Court for the District of Massachusetts concluded in *Essex Ins. Co.* v. *Tri-Town Corp.*, 863 F. Supp. 38, 39-41 (D. Mass. 1994), that the exclusion barred coverage for injuries caused by exposure to carbon monoxide released by a malfunctioning catalytic converter on a Zamboni ice cleaning machine operating in an improperly vented ice skating rink. The District Court did not take into account this court's decision in *Atlantic Mut.*

insured would not expect a pollution exclusion to abrogate this coverage.[7]

The judgment is vacated. A new judgment is to be entered declaring that the policy's pollution exclusion provision does not apply to relieve Western Alliance of its duties to defend and indemnify its insureds.

*So ordered.*

---

*Ins. Co.* v. *McFadden*, 413 Mass. 90 (1992), although it had been decided two years earlier.

In *United States Liab. Ins. Co.* v. *Bourbeau*, 49 F.3d 786, 786-787 (1st Cir. 1995), lead paint chips contaminated soil surrounding the area where the defendant had stripped and painted a building. The court concluded that the exclusion precluded coverage for property damage caused by the contamination. *Id.* at 787. The court distinguished *McFadden*, noting that *"McFadden* was not an environmental pollution case. *McFadden* concerned personal injury caused by the *presence* of lead paint in a household. This case concerns injury to property caused by the alleged negligent *discharge* of lead paint onto property. The latter is a classic example of 'pollution' — the discharging of a harmful substance onto land — while the former is most demonstrably not. An objectively reasonable person simply would not ascribe the word 'pollution' to the presence of lead paint in a house." *Id.* at 789. (Emphasis original.) This case could be distinguished for virtually the same reasons.

In *Dryden Oil Co. of New England* v. *Travelers Indem. Co.*, 91 F.3d 278, 281 (1st Cir. 1996), the Court of Appeals affirmed a conclusion that the claims alleged in the complaint, that there had been "spills or releases of oil, industrial lubricants and/or hazardous materials during the transfer, storing, mixing and manufacturing process," were excluded under the absolute pollution exclusion clause contained in the defendant's policy. The plaintiff lessee had used the property at issue for mixing and manufacturing industrial lubricants and oils. *Id.* at 280. Unlike this case, *Dryden Oil Co.* presents a classic example of "environmental pollution."

[7]Western Alliance and the amicus brief supporting its position have directed our attention to other decisions which hold that a pollution exclusion similar to this exclusion is sufficient to avoid coverage for occurrences like those described in the text of this opinion. We are not persuaded by these decisions. As was stated by Professor (now Judge) Keeton: "The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." R.E. Keeton, Insurance Law § 6.3(a), at 351 (1971).