Gailey, Timothy H., J.
This is an action for declaratory relief as to Plaintiff Eastern Casualty Insurance Company’s (“Eastern Casually”) obligations under a commercial general liability insurance policy (“CGLIP”) it issued to the Defendant The Home Store, Inc. (“Home Store”). Eastern Casualty has asserted that it properly refused to provide Home Store with coverage for a certain claim by reason of the plain language of certain written exclusions to the CGLIP. Home Store has asserted that there was coverage under the policy and that Eastern Casualty should have covered the claim and assumed the costs of defense against the claim.
The matter is now before the Court on Eastern Casualty’s Motion for Summary Judgment and Home Store’s Cross Motion for Summary Judgment (having counterclaimed for its defense costs and indemnification). Both parties assert that there are no material facts for trial and noncoverage or coverage of the underlying claim can be determined from the language of the CGLIP and exclusions as a matter of law.
The underlying claim arises from litigation over the damage caused by leakage of oil from the furnace unit in the basement of a modular home which was sold to Jeffrey Van Oudenhove and Shannon Eastman (“the homeowners”) by Home Store. To the extent here relevant the litigation on the underlying claim has by now been resolved by Summary Judgment in favor of Home Store, and the only question in this case is whether Eastern Casualty properly refused to undertake the costs of defending that underlying claim. The costs of defense at issue were substantial. For the following reasons Eastern Casualty’s Motion for Summary Judgment is DENIED and Home Store’s Cross Motion for Summary Judgment is ALLOWED as to the issue of liability in Count II of its Counterclaim only.

BACKGROUND

The following facts are undisputed unless otherwise noted. Home Store, a Massachusetts corporation located in Wately, Massachusetts, is in the business of building custom modular homes. Upon a homeowners’ request, Home Store will not only build the modular home but it will also serve as the general contractor to complete any work necessary to complete the home. Eastern Casualty issued Home Store a commercial general liability policy, with effective dates from August 1, 2001 to August 1, 2002. There is no dispute as to the actual wording (as opposed to the interpretation) of the policy, or that it was in effect at the time in issue.
On or around February 8, 2001, the homeowners contracted with Home Store for the construction, delivery, installation, and completion of a modular home, which included an oil-fired heating system, in Hadley, Massachusetts.
On or around December 25, 2001, a valve in the oil-fired heating system in the homeowner’s modular home failed, and oil leaked onto the basement floor of the home, and eventually it leaked through the floor into the underlying soil, all of which caused significant property damage, costs of clean-up, veterinary bills for injuries to two pets, and costs of replacement accommodations pending repairs to the heating system and clean-up. The homeowner’s insurance carrier, Safety Insurance (“Safety”) ultimately provided the homeowners with coverage for the value of their losses in the amount of $189,279,00. Subsequently, Safety, as subrogee for the homeowners, brought an action against Home Store alleging in essence that Home Store breached express and implied warranties and negligence (hereinafter referred to as “the Safety lawsuit”). Although Home Store properly notified Eastern Casualty of the claim, and asserted coverage under its general liability policy, Eastern Casualty refused to defend Home Store in the Safety lawsuit and refused coverage for the claim asserted by Safety and the homeowners.
Eastern Casualty alleges that its decision not to provide coverage is based in substantial part on the ‘Total Pollution Exclusion Endorsement” included in the policy it issued to Home Store, as well as certain other exclusions. Home Store challenges Eastern Casualty’s refusal to pay, alleging that a reasonable insured would expect that based on the policy language, the policy would cover the claim.
Subsequently, on January 25, 2005, the Suffolk Superior Court allowed Home Store’s Motion for Summary Judgment in the Safety lawsuit. As a result, the issues before this court now only concern whether, as part of its coverage under the CGLIP, Eastern Casualty owed Home Store a duty to defend the Safety lawsuit.
*364 There is no dispute that but for various policy exclusions, in particular the Total Pollution Exclusion Endorsement, and other exclusions discussed below, the CGLIP would have provided coverage. The issue on summary judgment therefore is whether under a plain reading of those exclusions Eastern Casualty should not have declined coverage and should not have refused to undertake the costs of defense.

STANDARD

This court grants summary judgment when there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as amatter of law. See MassR.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of establishing both that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue by either submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the moving party has no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).

DISCUSSION

I. General Interpretation of Insurance Policies

Massachusetts courts confront issues concerning the interpretation of an insurance contract as questions of law. Cody v. Connecticut General Life Ins. Co., 387 Mass. 142, 146 (1982). Once faced with such questions of law, the court’s interpretation of the policy is governed by common-law rules of contract construction. Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998); Sherman v. Employer’s Liability Assurance Corp., 343 Mass. 354, 357 (1961). In performing this analysis, the court’s purpose is to assess the intent of the parties by reading the contract language as a whole. Falmouth National Bank v. Ticor Title Ins. Co., 920 F.2d 1058, 1061 (1st Cir. 1990). Massachusetts courts will not add meaning to clear and unambiguous language within the provisions of an insurance policy that an insurer and insured agreed upon. See Reliance Ins. Co. v. Aetna Cas. & Surety Co., 393 Mass. 48, 52 (1994). Further, claims of policy language ambiguity among the parties do not indicate that the policy language is in fact ambiguous solely because the parties do not agree on a common interpretation. Suffolk Construction Co. v. Lonco Scaffolding, 47 Mass.App.Ct. 726, 729 (1999).
In policy language interpretation, the courts generally consider what a policyholder reasonably should expect his coverage to be. Bond Bros., Inc. v. Robinson, 393 Mass. 546,551 (1984); Western Alliance Insurance Co. v. Gül 426 Mass. 115, 117 (1997) (“[W]hen construing language in an insurance policy, [a court] considers what an objectively reasonable insured, reading the relevant policy language, would expect to be covered,” quoting Atlantic Mut. Ins. Co. v. McFadden, 413 Mass. 90, 92 (1992)). Further, when an insurance contract is deemed ambiguous, Massachusetts courts interpret it in a manner most favorable to the insured. Citation Ins. Co. v. Gomez, supra, 426 Mass, at 381. Massachusetts courts generally define ambiguity as the presentation of more than one meaning to a contract term which reasonable people would interpret differently. Citation Ins. Co. v. Gomez, supra, 426 Mass, at 381. However, if there is no ambiguity presented in the policy language, the court views the words in their ordinary sense. See generally Hakim v. Massachusetts Insurers Insolvency Fund, 424 Mass. 275 (1997).

II. The Total Pollution Exclusion Endorsement A. The Language of the Exclusion

The Total Pollution Exclusion Endorsement, which is a principal subject of this controversy, reads in pertinent part as follows:
This insurance does not apply to:
. . . Pollution
(1) “Bodily injury” or “property damage” which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of “pollutants” at any time . . .
The policy defines “pollutants” as “any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.”
The total pollution exclusion endorsement has been the subject of a great deal of litigation nationwide. See generally the discussion and cases cited by the Supreme Court of New Jersey in Nav-Its, Inc. v. Selective Insurance Co. of America, 183 N.J. 110 (2005). This discussion has, of course, included the Commonwealth. E.g., Western Alliance Insurance Co. v. Gill, supra, 426 Mass, at 118-21; U.S. Liability Ins. Co. v. Bourbeau, 49 F.3d 786 (1st Cir. 1995).
In Western Alliance Insurance Co. v. Gill, supra, 426 Mass, at 118, in interpreting the same or substantially similar language, the Supreme Judicial Court stated:
The exclusion should not reflexively be applied to accidents arising during the course of normal business activities simply because they involve a “discharge, dispersal, release or escape” of an “irritant or contaminant.”
After discussing a number of cases nationwide, the Court continued, 426 Mass, at 119-20:
The common thread between these decisions is that “(a]ll involve injuries resulting from everyday activities gone slightly, but not surprisingly, awry" . . . and in each, the insurer urged a broad reading of the pollution exclusion clause to cover the accident *365 at issue. However, an objectively reasonable insured, reading the language of the typical pollution exclusion, would not expect a disclaimer of coverage for these types of mishaps even though they involve “discharges,” “releases,” and “escapes” of “contaminants” and “irritants.”
The Supreme Judicial Court then went on to hold that the exclusion did not apply to a claim for damages suffered as the result of a release of carbon monoxide gas from a malfunctioning restaurant oven, even though in an industrial setting carbon monoxide can reasonably be considered a pollutant. 426 Mass. 120-21.
In Atlantic Mutual Ins. Co. v. McFadden, 413 Mass. 90 (1992), the Supreme Judicial Court held that a pollution exclusion in a comprehensive liability policy did not operate to exclude coverage for lead-contaminated paint found in the insured’s residential property. The McFadden court considered what a reasonable insured could have understood the exclusion to mean and concluded that although an insured could have understood the exclusion to apply to certain injuries, the reasonable insured would not have concluded that coverage was excluded for personal injury caused by the presence of lead paint in a house.
In sharp contrast are classic cases of industrial and environmental pollution, for example when there had been “spills or releases of oil, industrial lubricants and/or hazardous materials during the transfer, storing, mixing and manufacturing process,” the exclusion applied. Dryden Oil Co. of New England v. Travelers Indemnity Co., 91 F.3d 278, 281 (1st Cir. 1996), distinguished on that basis by the Supreme Judicial Court in Western Alliance Insurance Co. v. Gill supra, 426 Mass. 121 n.6.
Thus, critical to whether the exclusion applies is the context in which the damages occur.
Looking at the particular facts of the homeowners’ claim against Home Store, a reasonable insured in Home Store’s situation could reasonably understand that it would be covered for the damages caused by a single instance of broken oil furnace valve installed in one of the residences that Home Store sold. The malfunctioning furnace was an isolated accident, in a single-family home, that arose during the course of Home Store’s normal business activities. It involved damages resulting from Home Store’s activities “gone slightly, but not surprisingly, awry.” It did not involve pollution in an industrial context, or a discharge of oil or other contaminants into the ground as a part of Home Store’s industrial process. It involved a broken furnace.
An objectively reasonable insured, reading the language of the pollution exclusion, would not expect a disclaimer of coverage for damages caused by a broken home furnace.
Home Store purchased a general liability policy to protect against hazards that could arise in the ordinary course of its business. It could reasonably have assumed that a broken furnace was one of those hazards, and that damages from a broken residential furnace would not fall under a “pollution” exclusion.
Accordingly, the Total Pollution Exclusion Endorsement did not relieve Eastern Casually of its obligation to defend and indemnify Home Store from the homeowners’ claims.

III. Other Exclusions

Eastern Casualty also argues that two other exclusions apply to bar Home Store’s claim: the exclusion for “damage to your product” and the “faulty workmanship” exclusion. These two exclusions are similar and related, although surely Eastern Casualty cannot be contending that harm to two dogs is “damage to your product” . . .
The “damage to your product” and “faulty workmanship” exclusions arguments are essentially undercut by the Suffolk Superior Court’s decision in the Safety lawsuit. In its Memorandum Of and Order on the Defendant’s Motion for Summary Judgment issued in Civil Action no. 02-5186 (Safety Insurance Co. v. The Home Store, Inc.) (18 Mass. L. Rptr. 688) the Court entered summaiy judgment for Home Store on both claims of negligence and breach of warranty. It found no issue of material fact for trial on the issue of whether the fuel valve was damaged by any act or failure to act by the Home Store. It held that a “jury would not be warranted in finding that it was more probable that the fuel valve failed due to a defect in the valve or mistake during installation instead of some other cause ...” The Safely/homeowners claims did not, as shown by the evidence or lack thereof, arise out of some sort of products liability claim, or any defect in materials or workmanship. When an underlying case goes to judgment, whether the insurer assumes the defense or not, the insurer is bound by the result as to all material matters decided in that action that bear on the coverage issue. See Polaroid Corp. v. The Travelers Indemnity Co., 414 Mass 747, 763 n. 20 (1993); Miller v. U.S. Fidelity & Guar. Co., 291 Mass. 445, 448 (1935).
These exclusion clauses did not excuse Eastern Casualty from its duty to defend and indemnify Home Store.

CONCLUSION

None of the policy exclusions urged on the court by Eastern Casually should be reasonably interpreted as relieving Eastern Casualty from its obligation under the Commercial General Liability Insurance Policy to defend and indemnify Home Store from the underlying claims in this case. There being no issue of material fact as to that interpretation of the applicable policy, Summaiy Judgment is appropriate for the Defendant The Home Store on the coverage issue, i.e., liability on *366 Counterclaim I. With respect to the Home Store’s second and third counterclaims for breach of an implied covenant of good faith and fair dealing and for violation of G.L. ch. 93A, there are manifestly disputed factual issues, and summaiy judgment on those claims is unwarranted.

ORDER

For the foregoing reasons, Eastern Casualty’s Motion for Summary Judgment on its complaint is DENIED and The Home Store’s Cross Motion for Summaiy Judgment is ALLOWED as to counterclaim I, on the issue of liability only.