**CINCINNATI INSURANCE COMPANY, Plaintiff/Respondent,**

v.

**GERMAN ST. VINCENT ORPHAN ASSOCIATION, INC., Defendant/Appellant.**

**No. ED 78552.**

Missouri Court of Appeals, Eastern District, Division Four.

July 24, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 6, 2001.

David L. Baylard, Baylard, Billington & Dempsey, P.C., Union, MO, for Appellant.

Russell F. Watters, T. Michael Ward, Brown & James, P.C., St. Louis, MO, for Respondent.

SIMON, Judge.

German St. Vincent Orphan Association, Inc. (St.Vincent) appeals the summary judgment of the Circuit Court of St. Louis County in favor of Cincinnati Insurance Company (Cincinnati) on a declaratory judgment action on the issue of coverage for damages to St. Vincent's building and its contents resulting from the spread of dust containing asbestos.

On appeal, St. Vincent contends the trial court erred in granting Cincinnati's motion for summary judgment and denying St. Vincent's motion for partial summary judgment because: (a) the policy's absolute pollution exclusion clause is vague, ambiguous and overbroad and not applicable to the spread of asbestos within the building in that the asbestos was not discharged into the environment; (b) the damages to St. Vincent's building was caused by a vehicle driven by a workman that resembled a riding lawn mower or golf cart, and the vehicle was a specified cause of loss under the policy; and (c) the dust limitation in the policy does not apply to damages caused by the spread of asbestos because friable asbestos is a powder and not a dust as a matter of Missouri statutory law and because the policy cannot in one provision exclude coverage for St. Vincent's "Direct Physical Loss" when the loss results from a cause expressly insured against in another provision. We reverse.

On review of a grant of summary judgment, we view the record in the light most favorable to the party against whom judgment was rendered. *ITT Commercial Finance v. Mid–America Marine*, 854 S.W.2d 371, 376 (Mo.banc 1993). Our review is essentially *de novo*. *Id.*

Cincinnati's motion for summary judgment sets forth facts admitted by St. Vincent in its response. St. Vincent is a Missouri not-for-profit corporation with its principal place of business and premises in St. Louis County. In late 1998, St. Vincent decided to install new ceramic tile on the first floor of its premises, which required removal of the old vinyl flooring. To remove the old flooring, a workman of the contractor hired by St. Vincent used a propane powered floor stripper, which is virtually identical to a machine called a Deckabrator. The Deckabrator is depicted and described in various exhibits in the record. The floor stripper pulverized and scraped up the old vinyl flooring as the workman drove it up and down the hallway, and in so doing, generated thick clouds of dust containing asbestos which spread throughout the first floor of the premises and other parts of St. Vincent's building.

An official from the St. Louis County Health Department visited the premises and required St. Vincent to test the dust generated by the floor stripper for asbestos. The testing was positive for asbestos, and it was determined that the paper backing of the old vinyl flooring contained asbestos and created the dust that was generated by the floor stripper. As a result, the Health Department shut down the remodeling project, and St. Vincent was required to close off its first-floor operations. St. Vincent was also required to hire outside consultants and companies to formulate and implement a clean up procedure to remove all of the dust generated by the floor stripper and to restore the premises to an asbestos free condition.

On January 11, 1999, St. Vincent's premises was insured under a policy issued by

Cincinnati, which provides in pertinent part:

## BUILDING AND PERSONAL PROPERTY COVERAGE FORM

\* \* \*

### A. COVERAGE

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

\* \* \*

### H. DEFINITIONS

1. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

## CAUSES OF LOSS—SPECIAL FORM

\* \* \*

### A. COVERED CAUSES OF LOSS

When Special is shown in the Declarations, Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

1. Excluded in Section B., Exclusions; or

2. Limited in Section C., Limitations; that follow.

### B. EXCLUSIONS

\* \* \*

2. We will not pay for loss or damage caused by or resulting from any of the following:

\* \* \*

1. Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss." But if loss or damage by the "specified causes of loss" results, we will pay for the resulting damage caused by the "specified causes of loss."

\* \* \*

### C. LIMITATIONS

1. We will not pay for loss of or damage to:

\* \* \*

c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

(1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

(2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

\* \* \*

### F. DEFINITIONS

"Specified Causes of Loss" means the following:

Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism;

leakage from fire extinguishing equipment, sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

In its findings of fact, conclusions of law and judgment, the trial court concluded that, based upon the material, undisputed facts, Cincinnati was entitled to judgment as a matter of law for three reasons. First, relying on policy paragraph A., CAUSES OF LOSS—SPECIAL FORM, the trial court found that St. Vincent did not sustain a "direct physical loss" as a result of the release of asbestos into the interior of its premises. Second, the trial court found St. Vincent's loss did not result from a "specified cause of loss" under the policy, and the loss is therefore barred by the policy's pollution exclusion. Finally, the trial court found that St. Vincent's claim is barred by the dust limitation in the policy.

Although St. Vincent failed to follow the letter of Rule 84.04 in that it set forth its points relied on in subsections within a single point, we are able to ascertain the issues on appeal and will resolve the matter on its merits. Furthermore, although the minute sheets indicate the filing of numerous motions for summary judgment and responses thereto, the record contains one motion and one response. Therefore, we consider those documents in our review.

In its first subsection, St. Vincent contends the trial court erred in denying its motion for partial summary judgment and in granting Cincinnati's motion for summary judgment because the language contained in the pollution exclusion, paragraph B.2.l. of the policy's CAUSES OF LOSS—SPECIAL FORM, is vague, ambiguous and overbroad. St. Vincent contends there is virtually no substance or chemical in existence that would not irritate or damage some person or property.

St. Vincent further argues that the pollution exclusion is not applicable to the spread of friable asbestos within their building which was not discharged, dispersed, seeped, migrated, released or escaped into the environment. Cincinnati contends the release of asbestos on St. Vincent's premises is excluded under the pollution exclusion in that the exclusion is not vague, ambiguous or overbroad and is not limited to cases of traditional environmental pollution.

Insofar as an insurance contract may be open to different constructions, we will adopt the interpretation most favorable to insured. *Millers Mut. Ins. Ass'n of Illinois v. Shell Oil Co.*, 959 S.W.2d 864, 869 (Mo.App. E.D.1997). This rule does not authorize a perversion of language or the exercise of inventive powers for the purpose of creating ambiguity where none exists. *Id.* The rules of construction are inapplicable when an insurance policy is unambiguous. *Id.* The policy must be enforced as written. *Id.*

In support of its contention that the policy's definition of "pollutant" is vague, ambiguous or overbroad, St. Vincent cites *Westchester Fire Ins. Co. v. City of Pittsburg*, 768 F.Supp. 1463, 1470 (D.Kan.1991) for the proposition that a definition of "pollutant" in an insurance policy as being an "irritant" or "contaminant" is too broad because there is virtually no substance or chemical in existence that would not irritate or damage some person or property. The issue in *Westchester* was whether an "insecticide of low mammalian toxicity" sprayed from the back of municipal trucks was included in the definition of "pollutant" within the policy. The *Westchester* court held: "Plaintiff is asking the court to stretch the definition of 'pollutant' beyond 'what a reasonable person placed in the position of the insured would have understood the word to

mean.'" *Id.* We agree with the *Westchester* court that it is questionable whether an "insecticide of low mammalian toxicity" should be considered a pollutant. However, we find that friable asbestos unquestionably falls into the category of a solid or thermal "irritant" or "contaminant" as those words appear in policy's paragraph H.1., BUILDING AND PERSONAL PROPERTY COVERAGE FORM, defining "pollutant," and is therefore a pollutant as that term would be understood by a reasonable person in the position of the insured. Thus, we find the policy's definition of "pollutant" is not vague, ambiguous or overbroad.

█ St. Vincent also cites several cases applying pollution exclusions only in cases of traditional environmental pollution. Here, the language of the policy clearly applies the exclusion to the "discharge [or] release .... of pollutants." We cannot read the word "environment" into the policy to limit when a release or discharge has taken place. We find that the asbestos was released or discharged by the removal of the old vinyl flooring which constitutes a release or discharge of a pollutant as set forth in the exclusion.

█ In its second subsection, St. Vincent contends that the damage to its premises was caused by a "vehicle," a "specified cause[ ] of loss" under the policy's paragraph F., CAUSES OF LOSS—SPECIAL FORM, and that the floor scraper is a vehicle under the plain and ordinary meaning of the word. As a result, St. Vincent argues the pollution exclusion's exception for damages caused by a "specified cause[ ] of loss" applies to undermine Cincinnati's reliance on the pollution exclusion to deny coverage.

Cincinnati contends "specified causes of loss" under the policy are fortuitous events that result in "direct physical loss or damage" to the insured's property. It argues the threshold requirement of a "direct physical loss" under the policy is met when an item of tangible property has been physically altered by a "specified cause[ ] of loss." Furthermore, Cincinnati contends the damage was not the result of a "specified cause[ ] of loss" because the floor scraper is not a vehicle as the term "vehicle" should be read to mean "a conveyance for the transportation of goods and/or passengers on public highways."

Our examination of the policy reveals no definition of the word "vehicle." Our Supreme Court, in determining the applicability of a statute waiving sovereign immunity to injuries resulting from the negligent operation of a motor boat, adopted Webster's Third New International Dictionary definition of "vehicle" as "a means of carrying or transporting something .... a carrier of goods or passengers." *Schneider by Schneider v. State, Div. of Water Safety,* 748 S.W.2d 677, 678 (Mo.banc 1988).

An exhibit attached to Cincinnati's motion for summary judgment depicts a Deckabrator, which it alleges, and St. Vincent admits, is "virtually identical" to the floor scraper used on St. Vincent's premises. This exhibit describes the Deckabrator as a "ride-on unit" and shows an operator seated on the machine. Furthermore, in its motion for summary judgment, Cincinnati alleges that the workman "drove the machine up and down the hallway." Thus, there is no question that this "ride-on unit" served as "*a* means of .... trans*porting*" (emphasis added) the operator while the machine, under his direction, functioned to remove the vinyl flooring. Furthermore, the *Schneider* Court's definition of vehicle forecloses Cincinnati's contention that highway travel is a necessary element of "vehicle."

The record is clear that the floor scraper caused the release of the dust containing the asbestos resulting in the contamination. In their motion for summary judgment, Cincinnati repeatedly cites the affidavit testimony of William J. Donley, III, Executive Director of St. Vincent (Donley), that the "dust containing asbestos" was "generated by the floor scraper." Therefore, pursuant to our Supreme Court's definition of "vehicle" in the *Schneider* case, we conclude that the floor scraper is a vehicle as provided in the policy provision, CAUSES OF LOSS—SPECIAL FORM, and that the damage caused by the release of asbestos resulting from the vehicle's, floor scraper's, removal of the old flooring is a "specified cause[ ] of loss" warranting the application of the exception to the pollution exclusion.

■ In its third subsection, St. Vincent contends policy paragraph C.1.c., LIMITATIONS as to COVERED CAUSES OF LOSS, which limits coverage for damage due to dust, does not apply to the spread of friable asbestos throughout its premises because friable asbestos is a powder, and not dust, as a matter of Missouri law, citing the Air Conservation statute's definition of "Friable asbestos containing material" in Section 643.020(32) RSMo 1994. St. Vincent further argues that Cincinnati cannot in one provision exclude coverage for its direct physical loss when the loss results from a cause expressly insured against in another provision. St. Vincent contends that, read together in the context of these facts, the dust limitation and the "specified cause[ ] of loss" provision in the pollution exclusion are ambiguous and that causation should be dispositive of the question of coverage. Finally, St. Vincent argues that the vehicle, as a "specified cause[ ] of loss," is the efficient proximate cause of the entire loss resulting from the release of friable asbestos.

Cincinnati contends that Donley's continued reference in his affidavit to the damage causing material as "dust" proves the application of the policy's dust limitation. Cincinnati further argues that the dust limitation's exception for losses caused by external forces of nature is inapplicable because there was no breach of St. Vincent's walls or roof that permitted the entry of asbestos-containing dust from the outside environment to the interior of the building. Much less, Cincinnati argues, a breach caused by a "specified cause[ ] of loss" such as a vehicle.

Our review of the policy provides no definition of the word "dust." In various paragraphs of its motion, Cincinnati cites Donley's affidavit testimony wherein he repeatedly refers to the damage causing material as "dust" or "dust containing asbestos." In particular, paragraph seven of Cincinnati's motion cites Donley's testimony and alleges: "The testing was positive for asbestos, it being determined that the paper backing of the old vinyl flooring contained asbestos and created the *dust* that was generated by the floor stripper." (emphasis added). Furthermore, in paragraph eight of its motion, Cincinnati cites Donley, alleging: "As a result, . . . . St Vincent was required . . . . to remove all of the *dust* generated by the floor stripper and to restore the premises to an asbestos free condition." (emphasis added). In its response to Cincinnati's motion, St. Vincent "admits the allegations contained in paragraphs 1 through 13 of [Cincinnati]'s Motion for Summary Judgment." Thus, under the policy, "dust" caused damage to St. Vincent's property.

■ Insurance policies are to be given a reasonable construction and interpreted so as to afford coverage rather than to defeat coverage. *Cantrell v. Farm Bureau Town & Country Ins. Co. of Missouri*, 876 S.W.2d 660, 663 (Mo.App. W.D.

1994). Insofar as an insurance policy is open to different constructions, that most favorable to the insured must be adopted. *Id.* Courts enforce insurance policies as written, absent an applicable statute of limitation or public policy requiring coverage, provided the intent of policy language to cover or exclude coverage is plain and the language is unambiguous. *Id.* Language is ambiguous if it is reasonably open to different constructions and the language used will be viewed in the meaning that would ordinarily be understood by the layman who bought and paid for the policy. *Krombach v. Mayflower Ins. Co., LTD.,* 827 S.W.2d 208, 210 (Mo.banc 1992). In accord with the general standard of giving effect to the purpose of the contract, the rule is that provisos, exceptions or exemptions and words of limitation in the nature of an exception, are strictly construed against the insurer, where they are of uncertain import or reasonably susceptible of a double construction. George J. Couch et al., Couch on Insurance § 15.93 (2nd ed.1984); *Tenney v. American Life & Acc. Ins. Co.,* 338 S.W.2d 370, 371 (Mo.App. 1960).

As noted, the dust containing asbestos which caused damage to St. Vincent's property was a "pollutant" as contemplated by the policy and was released from under the old vinyl flooring. Thus, the pollution exclusion is applicable. Because the release of pollutants was caused by the floor scraper, a vehicle, the resultant damage was caused by a "specified cause[ ] of loss" and, consequently, covered under the exception to the pollution exclusion. However, the "specified causes of loss" are then subject to the limitation set forth in paragraph C.1.c., CAUSES OF LOSS—SPECIAL FORM, pertaining to damage caused by or resulting from various elements, including dust. Cincinnati contends this limitation applies to exclude coverage for the dust because it did not enter through the building's roof or walls that were damaged by a "Covered Cause of Loss." Thus, an ambiguity exists in that coverage is provided for damage resulting from a "specified cause[ ] of loss," i.e. vehicle, and coverage is then excluded by the limitation for damage resulting from dust, except in situations where the building first sustains damage to its walls or roof. *Lutsky v. Blue Cross Hosp. Service, Inc., of Missouri,* 695 S.W.2d 870, 875 (Mo.banc 1985). In light of this ambiguity, and construing the policy so as to provide coverage rather than to defeat it, we conclude the judgment must be reversed.

Judgment reversed.

LAWRENCE E. MOONEY, P.J. and SHERRI B. SULLIVAN, J., concur.