Borenstein, Isaac, J.
INTRODUCTION
This case arises out of a dispute involving an insurance contract. The plaintiffs seek declaratory judgment that the pollution exclusion in their insurance policy issued by the defendant does not bar coverage for their property damage caused by dust containing lead generated by a negligent third party. The defendant contends that lead is a pollutant and thus coverage is barred by the pollution exclusion. This matter is before the court on cross motions for summary judgment pursuant to Mass.R.Civ.P. 56, filed by all parties to the suit. For the reasons set forth below, the plaintiffs’ Motion for Summary Judgment is ALLOWED, and the defendant’s Motion for Summary Judgment is DENIED.
BACKGROUND
The summary judgment record contains the following undisputed facts. The incident at issue in this case happened on April 25, 2003, at 165 Friend Street, in Boston, Massachusetts (“Friend Street premises”). Andrew Robinson International, Inc., Andrew Robinson International Financial Services, Inc., Andrew Robinson International Insurance Brokerage, Inc., Andrew Robinson International Risk Management, Inc. (collec *61 tively, “plaintiffs” or “Andrew Robinson Companies”) occupied Unit Three on the Friend Street premises on April 25, 2003. The Hartford Fire Insurance Company (“defendant” or “The Hartford”) insured the plaintiffs at Unit Three on the Friend Street premises, effective June 16, 2002 to June 16, 2003. A neighbor of the plaintiffs, Richard W. Gannett (“Mr. Gannett”), occupied Unit Two, located directly below Unit Three. On April 25,2003, the defendant also insured Mr. Gannett d/b/a Gannett & Associates in Unit Two on the Friend Street premises.
For an annual premium of $1,601, the plaintiffs purchased a Hartford Spectrum Business Insurance Policy (“Spectrum Policy”) from the defendant. The Spectrum Policy contained a Special Property Coverage Form (“Coverage Form”) that provided, in pertinent part, as follows:
A. Coverage
We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations (also called described premises in this policy) caused by or resulting from any Covered Cause of Loss.
B. Exclusions
1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
i. Pollution: We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release, or escape of “pollutants” unless the discharge, dispersal, seepage, migration, release, or escape is itself caused by any of the “specified causes of loss.” But if loss or damage by the “specified causes of loss” results, we will pay for the resulting loss or damage caused by the “specified cause of loss.”
3. We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.
c. Negligent Work: Faulty, inadequate, or defective:
(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
(3) Materials used in repair, construction, renovation, or remodeling; or,
(4) Maintenance of part or all of any property on or off the described premises.
G. Property Definitions
5. “Pollutants” means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.
7. “Specified Causes of Loss” means the following: Fire; lightning; explosion, windstorm, or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice, or sleet; water damage.
On April 25, 2003, Mr. Gannett was conducting renovations in Unit Two on the Friend Street premises. Contractors working for Mr. Gannett sandblasted the interior walls of Unit Two, causing the release of dust into the air. The contractors failed to take any safety precautions to prevent the dust from escaping Unit Two, and also failed to test for the presence of lead in the interior walls before commencing work. Consequently, the dust containing lead escaped Unit Two, and migrated to Unit Three. The dust containing lead settled throughout Units Two and Three.
On April 28, 2003, ASAP Environmental, Inc. collected dust wipe samples from Units Two and Three on the Friend Street premises for lead determination analysis. Test results showed the dust samples contained lead in excess of federal and state regulations.
On April 30, 2003, the Boston Public Health Commission (the “Commission”) ordered Mr. Gannett “to discontinue any further work until all clean-up of dust and paint chips has been completed.” The Commission also “suggested that, during the clean-up of the building, all tenants and workers should [ ] relocate to another location because they can’t be around during the clean-up process.”
Immediately after the incident, the plaintiffs sought recovery from Mr. Gannett and the defendant, filing a third-party liability claim and a subsequent lawsuit against Mr. Gannett d/b/a Gannett & Associates. The plaintiffs also filed a first-party properly claim against its own Spectrum Policy.
On May 5, 2003, the defendant denied the plaintiffs’ first-party property claim, on the basis that the lead in the dust was a “pollutant” as defined in the Spectrum Policy, and the Spectrum Policy does not cover loss caused by or resulting from pollution.
In July 2003, the Andrew Robinson Companies filed suit against The Hartford, seeking declaratory judgment that the pollution exclusion clause of its Spectrum Policy does not bar recovery for the damage caused to Unit Three by the dust containing lead.
DISCUSSION
1. STANDARD OF REVIEW
Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, *62 713-14 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The party moving for summary judgment bears the burden of demonstrating that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A moving party who does not bear the burden of proof at trial may demonstrate the absence of a triable issue by submitting affirmative evidence that negates an essential element of the nonmoving parly’s claim or by showing that the nonmoving parly has no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis, 410 Mass, at 716. If both parties move for summary judgment, and “in essence, there is no real dispute as to the salient facts or [ ] only a question of law is involved,” the court shall grant summary judgment to the party entitled to judgment as a matter of law. Cassesso, 390 Mass. at 422.
II. GENERAL STANDARD FOR INTERPRETING INSURANCE POLICIES
In the instant case, the plaintiffs and the defendant agree that the issue before this court is whether the pollution exclusion clause in the Spectrum Policy precludes coverage for properly damage and loss caused by dust containing lead.
The interpretation of insurance policies is a question of law. Cody v. Connecticut General Life Insurance Co., 387 Mass. 142, 146 (1982). When interpreting insurance policies, courts are guided by the following principles. If the terms of an exclusionary clause are unambiguous, the words of the policy are to be construed in their usual and ordinary sense. Barnstable County Mutual Fire Insurance Co. v. Lally, 374 Mass. 602, 605 (1978). An ambiguity exists in an insurance contract when the language contained therein is susceptible of more than one meaning. Jefferson Insurance Co. of New York v. Holyoke, 23 Mass.App.Ct. 472, 474 (1987). A clause is ambiguous if it is shown that reasonably intelligent people would differ as to which one of two or more meanings is the proper one. Id. at 474-75. However, an ambiguity does not exist simply because the opposing parties favor contradicting interpretations. Id. at 475. Courts should construe exclusionary provisions strictly against the insurer so as not to defeat any intended coverage. Vappi & Co., Inc. v. Aetna Casualty & Surety Co., 348 Mass. 427, 431-32 (1965). Any doubt created by the existence of an ambiguity should be resolved against the insurer. Camp Dresser & McKee, Inc. v. Home Insurance Co., 30 Mass.App.Ct. 318, 324 (1991).
Generally, “(t]he insured bears the initial burden of proving that the loss is within the description of the risks covered.” Highlands Insurance Co. v. Aerovox, Inc., 424 Mass. 226, 230 (1997), citing Tumblin v. American Insurance Co., 344 Mass. 318, 320 (1962). When coverage is barred on the basis of an exclusion described in a separate and distinct clause of the policy, the insurer bears the burden to prove the applicability of the exclusion to the case at hand. Id. at 231, citing Murray v. Continental Insurance Co., 313 Mass. 557, 566 (1943). If the insurer demonstrates that coverage is excluded, the burden shifts back to the insured to show that an exception to the exclusion applies. Id.
III. “POLLUTANT’ DEFINED IN THE COVERAGE FORM
Under “EXCLUSIONS,” the Coverage Form states “(w]e will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release, or escape of ‘pollutants’ unless . . .” Under “PROPERTY DEFINITIONS,” the Coverage Form specifies that “ ‘pollutants’ means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.”
In support of its motion for summary judgment, the plaintiffs assert that lead is not expressly identified as a pollutant in the pollution exclusion clause. The plaintiffs argue that the pollution exclusion is ambiguous, and lead in paint is not a pollutant for which coverage is excluded under the Spectrum Policy, citing Atlantic Mutual Insurance Company v. McFadden, 413 Mass. 90 (1992) (holding lead in paint is not pollutant for purpose of pollution exclusion clause in general liability policy). The plaintiffs argue that their contention is further supported by the fact that, shortly after the Supreme Judicial Court issued its decision in McFadden, the defendant began issuing a separate exclusion, the “Absolute Lead Exclusion,” to address claims based on exposure to lead.
In its opposition to the plaintiffs’ motion for summary judgment and in support of its own motion for summary judgment, the defendant argues that the pollution exclusion is clear and unambiguous, and dust containing lead that is released, discharged, or dispersed onto adjacent property is a pollutant for which coverage is barred under the pollution exclusion clause, citing United States Liability Insurance Co. v. Bourbeau, 49 F.3d 786 (1st Cir. 1995) (holding lead paint chips are a pollutant within meaning of absolute pollution exclusion clause); Peace ex ret Lerner v. Northwestern National Insurance Co., 596 N.W.2d 429 (Wis. 1999) (holding lead present in paint that chips, flakes, or is reduced to dust is a pollutant for purpose of pollution exclusion clause in general liability policy); Cincinnatti Insurance Co. v. German St. Vincent Orphan Ass’n., 54 S.W.3d 661 (Mo.App. 2001) (holding friable asbestos is a pollutant within the meaning of the pollution exclusion clause). The defendant also asserts that the Absolute Lead Exclusion modifies liability coverage, not property coverage; and, its reference to “lead hazard” contemplates excluding coverage for the mere presence of lead.
*63 In its opposition to the defendant’s cross motion for summary judgment, the plaintiffs correctly point out that none of the aforementioned cases cited by the defendant have a binding effect on this court. Even though courts in other jurisdictions may be persuaded that paint dust containing lead is a pollutant for the purposes of the pollution exclusion clause, this court is not compelled to follow those decisions in this case. Nevertheless, the following analysis will begin with a discussion of Cincinnatti Insurance Co. v. German St. Vincent Orphan Ass’n., 54 S.W.3d 661 (Mo.App. 2001).
In German St. Vincent, the insurer sought declaratory judgment that its policy excluded coverage for damage to the interior of the insured’s building caused by dust containing asbestos generated during renovations inside the insured’s building. Id. at 661. It was undisputed that a motorized floor scraper driven by a workman caused the release of the asbestos contaminated dust. Id. at 667. The insured’s policy contained a pollution exclusion clause, indicating that damage or loss caused by the “[djischarge, dispersal, seepage, migration, release, or escape of ‘pollutants’ [is not covered] unless the discharge, dispersal, seepage, migration, release, or escape is itself caused by any of the ‘specified causes of loss,’ ” and further indicated that ‘specified causes of loss’ means the following . . . aircraft or vehicles ..." Id. at 664. Despite concluding that friable asbestos was a pollutant as defined in the insured’s policy, the court in German St. Vincent entered judgment in favor of the insured, holding that the scraper was a “vehicle” and therefore a “specified cause of loss,” and that the damage was covered by the policy because an ambiguity existed in the policy whereby “coverage [was] provided for damage resulting from a ‘specified cause[ ] of loss,’ i.e. vehicle, and coverage [was] then excluded by the limitation for damage resulting from dust, except in situations where the building first sustains damage to its walls or roof.” Id. at 668.
The pollution exclusion clause interpreted by the court in German St. Vincentis identical to the pollution exclusion clause at issue in the instant case. As in German St Vincent, the dispositive issue in this case is not whether lead in paint dust is a pollutant as defined in the Coverage Form of the Spectrum Policy. Rather, this case turns on whether the Spectrum Policy covers damage to the insured’s property caused by dust containing lead that was generated during renovations conducted by a negligent third party.
IV. APPLICABILITY OF THE POLLUTION EXCLUSION CLAUSE
In support of its motion for summary judgment, the plaintiffs contend that the pollution exclusion clause is applicable in cases involving “discharge, dispersal, release, or escape” of a “pollutant” in an industrial or environmental setting, and that this does not hold true under the facts and circumstances of the instant case. The plaintiffs offer two cases in support of their contention, namely Atlantic Mutual Insurance Co. v. McFadden, 413 Mass. 90 (1992), and Western Alliance Insurance Co. v. Gill, 426 Mass. 115 (1997).
In McFadden, a case arising out of lead poisoning of two children on property allegedly owned or operated by the insured, the insurer argued that lead in paint, putty, or plaster, although not specifically listed as a “contaminant” or “irritant” in the pollution exclusion clause of the general liability policy at issue, qualifies as either or both under the policy. 413 Mass, at 91. The court disagreed, concluding that the insurer had a duty to defend the insured against action for damages stemming from the incident. Id. The court stated that “[w]hen construing language in an insurance policy, we ‘consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.’ ” Id. at 92, citing Hazen Paper Co. v. United States Fidelity & Guar. Co., 407 Mass. 689, 700. The court reasoned further that “an insured could reasonably have understood the provision at issue to exclude coverage for injury caused by certain forms of industrial pollution, but not coverage for injury allegedly caused by the presence of leaded materials in a private residence.” Id. The court added that leaded materials are not expressly defined as a “pollutant” in the policy; and, certain words in the pollution exclusion clause, namely “discharge,” “dispersal,” “release,” and “escape,” “are terms of art in environmental law which generally are used with reference to damage or injury caused by improper disposal or containment of hazardous waste.” Id.
In Gill a case arising out of a restaurant patron’s exposure to carbon monoxide fumes emitted from the insured restaurant’s tandoori ovens, the court interpreted the same pollution exclusion provision that was at issue in McFadden. 426 Mass. at 117. After acknowledging that “there is a difference between lead paint poisoning and carbon monoxide poisoning, and between a private residence and a business,” that court stated that “we think that the construction given to the exclusion in McFadden also applies in this case.” Id. at 118. The court took exception to the inclusion of the terms “discharge,” “dispersal,” “release,” and “escape,” and added that the pollution exclusion’s definition of “pollutants” endeavors to particularize the more general words “irritant or contaminant” by reference to “smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.” Id. The court reasoned that “[e]ach of the latter words brings to mind products or byproducts of industrial production that may cause environmental pollution or contamination.” Id. The insurer “may have expected the provision to sweep broadly,” but the court must interpret and apply the pollution exclusion “in a commonsense manner with due attention to the circumstances of the accident giving rise to a coverage claim.” Id. Entering judgment in favor of the insured, the court stated that “the exclusion should not reflexively be applied to acci *64 dents arising during the course of normal business activities simply because they involve a ‘discharge, dispersal, release or escape’ of an ‘irritant or contaminant.’ ’’ Id.
In its opposition to the plaintiffs’ motion for summary judgment and in support of its own motion for summary judgment, the defendant contends that the plaintiffs’ claim is barred by the pollution exclusion clause on the grounds that: (1) the plain language of the pollution exclusion clause is clear and unambiguous; (2) nothing in McFadden, Gill or any Massachusetts case subsequent to those decisions specifies that dust containing lead released inside a commercial building is not environmental pollution; and (3) the facts of this case prove that the exclusionary clause was triggered. See Town of Wakefield v. Royal Insurance Co., Civil No. 94-1579 (Middlesex County Super.Ct. July 20, 1995) (Brassard, J.) (4 Mass. L. Rptr. 41) (boiler room oil leak spilled into sewage system and flowed to water treatment plant, coverage barred by absolute pollution exclusion); Dryden Oil Co. of New England v. Travelers Indem,, 91 F.3d 278 (1st Cir. 1996) (spills/releases of oil, industrial lubricants, and/or hazardous materials onto land during transfer, storing, mixing, and manufacturing process excluded, coverage barred by absolute pollution exclusion); Halstead Industries, Inc. v. Home Insurance Co., Civil No. 9603835 (Mass.Super.Ct. January 14, 1998) (Cratsley, J.) (fuel oil released onto land, coverage barred under absolute pollution exclusion); Utica Mutual Insurance Co. v. Hall Equipment, Inc. et al., 73 F.Sup.2d 83 (D.Mass. 1999) (absolute pollution exclusion relieves duty of insurer to indemnify insured for any “loss, cost, or expense” claims arising out of release of fuel oil onto land because of insured’s alleged faulty repair of machine on customer’s property); and Feinberg v. Commercial Union Insurance Co., 54 Mass.App.Ct. 587 (2002) (rubber product manufacturer released pollutants into soil and groundwater, coverage barred by absolute pollution exclusion). The defendant argues that the Commission’s intervention and decision to issue a cease work order support its environmental pollution contention, claiming that the order for clean-up pursuant to environmental regulations proves that lead in paint dust is a pollutant, thus triggering the pollution exclusion.
In its opposition to the defendant’s cross motion for summary judgment, the plaintiffs argue that all of the authorities cited by the defendant represent “classic” examples of environmental pollution, immediately distinguishable from McFadden, Gill and the case at bar. The plaintiffs contend that the mere fact that lead is involved in this case does not make this case a “classic case of pollution.” Dorchester Mutual Fire Insurance Co. v. First Kostas Corporation, Inc., Civil No. 97-01054 (Mass.Super.Ct. February 26, 1998) (Gants, J.) (8 Mass. L. Rptr. 188) (stating “McFadden is crystal clear in ruling that the pollution exclusion does not cover injury caused by ‘the presence of leaded materials in a private residence’ ”). This court agrees. The defendant has not met its burden to prove that the pollution exclusion applies to the case at hand.
In discussing the McFadden holding, the court in Bourbeau stated that there is a difference between the “presence of lead paint in a household” and the “discharge of lead paint onto property.” 49 F.3d. at 790. “The latter is a classic example of ‘pollution’ — the discharge of a harmful substance onto land — while the former is most demonstrably not.” Id. Thus, it must follow that there is a difference between lead in paint dust contained in a building and lead in paint dust discharged onto land. Lead in paint dust discharged onto land is a “classic case of pollution,” whereas lead in paint dust contained in a building is not. Given that “(a]n objectively reasonable person simply would not ascribe the word ‘pollution’ to the presence of lead paint in a house,” id., it follows that an objectively reasonable person would not ascribe the word “pollution” to the presence of lead in paint dust contained in a building either.
While this court is not willing to read the words “environmental” or “industrial” into the pollution exclusion provision, clearly there is a link between the discharge of a hazardous substance onto land or water and the classification of a case as environmental pollution. This implicit connection is suggested in at least two sections of the Coverage Form. First, under the Debris Removal section, “Additional Coverage does not apply to costs to .. . extract ‘pollutants’ from land ... or remove, restore, or replace polluted land or water." (Emphasis added.) And, second, under the Pollutant Clean Up and Removal section, “(w]e will pay your expense to extract ‘pollutants’ from land or water if the discharge, dispersal, seepage, migration, release, or escape of the ’’pollutants" is caused by or results from a Covered Cause of Loss ..." (Emphasis added.)
In the instant case, the Commission performed an on-site investigation of the Friend Street premises shortly after the April 25, 2003 negligent sandblasting incident in Unit Two. The Commission “[n]otice[d] dust all over the windows and floors” of the building, but made no findings of dust discharged onto land or water. Because the dust contained lead, the Commission ordered clean-up pursuant to environmental regulations. Contrary to the defendant’s interpretation of the Commission’s order, the implication of environmental law has no bearing on the classification of this case; it merely highlights the hazardous nature of lead. Given that the dust containing lead was restricted to the interior of the building in which it was generated, this is not a case of environmental pollution.
Although this court recognizes that some courts have held the pollution exclusion clause unambiguous under all circumstances, see Bourbeau, 49 F.3d 786, this court is not bound by and will not adopt these principles here. In light of the facts and circumstances of this particular case, doing so would mark a depar *65 ture from the well-established principles of insurance policy interpretation. Instead, this court will follow the line of reasoning employed by those courts that determined ambiguity based on an analysis of the exclusionary provision at issue when applied to the facts and circumstances of the case at bar. See German St. Vincent 54 S.W.3d 661; McFadden, 413 Mass. 90; Gill 426 Mass. 115.
It is an undisputed fact in this case that dust containing lead that caused damage, to the plaintiffs’ property was created by a negligent neighbor, Mr. Gannett. In its motion for summary judgment and in its opposition to the defendant’s cross motion for summary judgment, the plaintiffs claim they purchased this policy of insurance to protect against potential premises or operations hazards, and contend that they are entitled to summary judgment as a matter of law because the pollution exclusion clause does not apply to a neighbor’s negligent act involving harmful substances. The parties do not dispute that a third party’s negligence is an insured risk. The defendant maintains, however, that coverage for a third party’s negligent act that releases a pollutant is excluded by the pollution exclusion clause.
Although negligence is not listed as a “Specified Cause of Loss” and the pollution exclusion clause may appear applicable on its face, Massachusetts courts have identified an exception. See Jussim v. Massachusetts Bay Insurance Co., 415 Mass. 24 (1993). In Jussim, the Supreme Judicial Court held if the efficient proximate cause of the loss is an insured risk, coverage will be allowed, even though the final form of the property damage, produced by series of related events, appeared to take the loss outside of the terms of the policy. Id. at 27. Proximate cause means “[t]he . . . cause that sets in motion a train of events [that] brings about a result without the intervention of any force started and working actively from a new and independent source . . .” Id. Despite its apparent applicability here, this court acknowledges that the “train of events” test may be “foreclosed by inserting such language excluding coverage for loss caused ‘directly or indirectly’ by pollutants and that ‘such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.’ ” Hall, 73 F.Sup.2d at 92. Given that such terms are included in the pollution exclusion clause at issue in this case, it is obvious that The Hartford desired to “eliminate coverage for pollution . . . caused by a fortuitous negligent act.” Jussim, 415 Mass, at 31.
In its opposition to plaintiffs’ motion for summary judgment and in support of its own motion for summary judgment, the defendant contends that “(t]here is nothing to suggest that the plaintiffs’ damages arose from any of the ‘Specified Causes of Loss’ set forth in the [Spectrum] Policy, i.e., fire, lightning, explosion, windstorm, or hail; smoke; aircraft or vehicles; riot or civil commotion . . .” (Emphasis added.) This court disagrees. One ambiguity in the Spectrum Policy lies in the fact that the Coverage Form does not specifically define “smoke” or “dust.” As evidenced by dictionary definitions of the two words, “smoke” and “dust” are general terms, with overlapping definitions. For instance, “smoke” may mean “[a] cloud of fine particulate matter,” and “dust” may mean “[f]ine, dry particles of matter” or “[a] cloud of dust.”[2] Thus, under certain circumstances, dust and smoke are interchangeable.
In the affidavit of John Paul Sutrich (“Mr. Sutrich"), President of the Andrew Robinson Companies, Mr. Sutrich described the April 25, 2003 sandblasting incident as follows; “While working in my office [Unit Three] ... I suddenly noticed large quantities of dust continuously coming up through the floor and settling throughout my entire unit. After about fifteen minutes, when the dust was so dense, I could not see from one end of the office to the other ...” Mr. Sutrich’s description, together with the undisputed facts of this case, establish that: (1) the sandblasting in Unit Two created a cloud of dust that was composed of paint particulate matter and lead; and, (2) the cloud of dust spread from Unit Two to Unit Three, becoming so dense at times that visibility was impaired. Under these conditions, the cloud of dust could fall under the dictionary definition of “smoke.” That is, if a cloud of fine particles of matter serves as a definition for both “dust” and “smoke,” then a reasonable policy holder could believe that property damage caused by the release of particulate matter containing lead falls under the “Specified Causes of Loss,” namely that it falls under the smoke exception. Two additional ambiguities in the Spectrum Policy complicate this matter further.
First, the Coverage Form does not indicate whether damage caused by smoke containing a pollutant is excluded under the pollution exclusion clause. The Coverage Form states that damage caused by pollution is excluded, where “ ‘Pollutants’ means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke...” (Emphasis added.) However, the Coverage Form also states that, if the pollution-related damage is caused by one of the “Specified Causes of Loss,” then the resulting damage is covered, where “Specified Causes of Loss” means “fire; lightning . . . smoke . . .” (Emphasis added.) In other words, under the pollution exclusion clause, “smoke” is a “Pollutant” and a “Specified Cause of Loss.” Thus, under the Spectrum Policy, property damage caused by smoke is excluded as a “Pollutant” but covered as a “Specified Cause[ ] of Loss” under the pollution exclusion clause.
Second, the Coverage Form does not make it clear whether damage caused by smoke composed of fine particulate matter or dust containing a pollutant is covered. In particular, the “Limitations” provision of the Coverage Form provides that “[w]e will not pay for loss or damage to the interior of any building . . . caused by . . . dust. . . unless [t]he building or struc *66 ture first sustains damage by a Covered Cause of Loss to its roof or walls through which the . . . dust enters . . .” However, the Coverage Form also indicates that a cloud of fine particulate matter, i.e. dust or smoke, that contains lead may qualify as a “Specified Causef ] of Loss.” Thus, under the Spectrum Policy, property damage caused by a cloud of fine particulate matter that contains lead may be limited or excluded under the “Limitations” provision but covered as an exception to the pollution exclusion clause.
When presented with the aforementioned ambiguities in the Spectrum Policy, a policyholder could reasonably believe that (and justifiably rely on) property damage caused by a cloud of fine particulate matter, i.e. dust or smoke, containing lead qualifies as a “Specified Cause! ] of Loss,” for which coverage is allowed under the pollution exclusion clause. In light of the well established rule that ambiguities in insurance contracts are to be construed against the insurer, see Cody v. Connecticut Gen. Life. Ins. Co., 387 Mass 142, 146, this court finds that the plaintiffs’ property damage caused by the cloud of fine particulate matter, i.e. dust or smoke, containing lead is covered under their Spectrum Policy issued by the defendant. Accordingly, the plaintiffs are entitled to summary judgment.
ORDER
” For the foregoing reasons, it is hereby ORDERED that the plaintiffs’ Motion for Summary Judgment is ALLOWED, and the defendant’s Motion for Summary Judgment is DENIED.

Webster’s II New College Dictionary (rev. 1999).